UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case 1:21-cr-00575-JDB |
| | : | |
| **JAMES VARNELL CUSICK JR.** | : | |
| | : | |
| **Defendant.** | : | |

**DEFENDANT JAMES VARNELL CUSICK JR's
SENTENCING MEMORANDUM**

1. Plaintiff James Varnell Cusick JR ("Cusick") by undersigned counsel, hereby submits to the Court his Sentencing Memorandum. **Defendant respectfully requests a sentence of one (1) year probation, no fine, and no restitution.** Cusick is a retired former Christian pastor, a decorated Vietnam combat veteran, and a first-time offender. Probation is the presumed sentence for a first-time misdemeanant.[1]

---

[1] Research shows a "weak relationship between incarceration and crime reduction, and highlights proven
strategies for improving public safety that are more effective and less expensive than incarceration." The best way to promote public safety and ensure that convicted persons can lead law-abiding lives is through broad use of non-incarceration sentences, especially since "incarceration does little to change a person's behavior" and persons sentenced to prison have  20 18 U.S.C. § 3553(a)(2)(D). Vera Institute of Justice, Overview of The Prison Paradox: More Incarceration Will Not Make Us Safer (July 2017), https://www.vera.org/publications/for-the-record-prison-paradox-incarceration-not-safer

2. The government's proposed scoring of disorderly conduct as a ten-point base offense level is preposterous, under any plain reading of the USSG, legal definitions, or any other guiding principle of law. Disorderly conduct should be scored as a <u>two-point</u> base-offense, consistent with creating a public nuisance, disturbing the peace, or other minor crimes. Disorderly conduct is <u>not</u> 'impeding' or 'obstructing officers,' as suggested by the government (and, unfortunately the U.S. Probation office).

## INTRODUCTION AND OVERVIEW

1. Defendant James Cusick is almost certainly among the least culpable of all Jan. 6 defendants who have been prosecuted for entering the U.S. Capitol on Jan. 6, 2021. Defendant Cusick was charged with four misdemeanor counts on June 29, 2021. **Count 1**, Entering and Remaining in Restricted Building, in violation of 18 USC §1752(a)(1); **Count 2**, Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 USC §1752(a)(2); **Count 3**, Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 USC §5104(e)(2)(D); and **Count 4**, Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC §5104(e)(2)(G).

### I.   SENTENCING REQUESTED BY DEFENDANT

Defendant Cusick requests as the Court's resolution of this matter as

follows:

1) **A sentence of one (1) year probation, no fine, and no restitution.** Cusick has already essentially served two years of supervised pretrial release successfully and to the satisfaction of the probation officer in Florida.

2) Cusick has complied with all conditions of his release over the past two years.

3) M. Cusick has a negative net worth, and a negative monthly income.

II. **SENTENCING RECOMMENDED BY PRESENTENCE INVESTIGATION REPORT AND OBJECTIONS TO PRESENTENCE INVESTIGATIVE REPORT**

**The government's (and probation office's) proposed 10-point "base offense level" for "disorderly conduct" is preposterous on its face.**

The government's (and oddly it seems, the US Probation Office's) creative math begins with a notion that "since there is no applicable Chapter" for disorderly conduct in the USSG appendix, the Court should apply the points attributable to "obstructing or impeding officers" as "the most analogous guideline." See U.S.S.G. § 2X5.1. Here, that is U.S.S.G. § 2A2.4, "Obstructing or Impeding Officers." (Paragraph 52 of the PSR bizarrely adopts the government's notion, stating that "The guideline for 18 USC § 1752 offense is found in USSG §2A2.4 of the guidelines. That section provides that an offense involving obstructing or impeding officers has a *base offense level of 10*."

Section 1752(a)(2) "disorderly conduct" is a misdemeanor—among the pettiest offenses in the Criminal Code; whereas "obstructing or impeding officers" as chosen by the prosecution and probation office, applies to felonies *punishable by years in prison*. Thus, the base line chosen by the government and probation office is plainly wrong.[2] Nothing in the §1752(a)(2) statute or the charge against the defendant *even mentions obstructing or impeding officers*. If the government had any evidence that the defendant obstructed or impeded officers on Jan. 6, the government surely would have charged the defendant under Section 231 or even section 111(a) (both serious felonies).

---

[2] Note that even §2X5.2 of the USSG provide that incomparable "Class A Misdemeanors (Not Covered by Another Specific Offense Guideline), should have a base offense level of 6.

Sentencing law requires that when defining the character of particular offenses, a court should look to federal law and consider such generic sources as the Model Penal Code and legal dictionaries to define these offenses. See *United States v. Elmore*, 108 F.3d 23 (3rd Cir. 1997) at 25-26; cf. *Taylor v. United States*, 495 U.S. 575, 598 n. 8, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) (citing the Model Penal Code as support for the generic definition of "burglary").

A person may be convicted of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, he "makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present." Model Penal Code § 250.2(1) (1980).  "Disturbing the peace" is similarly defined as "[t]he criminal offense of creating a public disturbance or engaging in disorderly conduct, particularly by making an unnecessary or distracting noise." Black's Law Dictionary 183 (7th ed. 1999). These offenses typically are directed at the public at large, and need not involve any specific threat of property damage or personal injury.

The Model Penal Code provides that:

A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he

(a) engages in fighting or threatening, or in violent or tumultuous behavior; or

(b) makes unreasonable noise or offensively coarse utterance, gesture or display, or addresses abusive language to any person present; or

(c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

Model Penal Code § 250.2(1) (1980).

**While the USSG does not explicitly provide a base offense score for disorderly conduct, the USSG itself describes disorderly conduct as such a petty offense that a prior conviction for disorderly conduct merits <u>no criminal history points whatsoever</u> unless the defendant served substantial jail time for it.**

USSG §4A1.2 (2)(c) provides that "Sentences for misdemeanor and petty offenses are counted, except as follows:

(1) Sentences for the following prior offenses and offenses similar to them,

by whatever name they are known, are counted only if (A) the sentence

was a term of probation of more than one year or a term of imprisonment

of at least thirty days, or (B) the prior offense was similar to an instant

offense:

*Careless or reckless driving*

*Contempt of court*

***<u>Disorderly conduct</u>** or disturbing the peace*

*Driving without a license or with a revoked or suspended license*

*False information to a police officer*

*Gambling*

*Hindering or failure to obey a police officer*

*Insufficient funds check*

*Leaving the scene of an accident*

*Non-support*

   *Prostitution*

   *Resisting arrest*

   *Trespassing.*

Thus, the USSG itself regards "disorderly conduct" as so petty that it merits <u>no criminal history points whatsoever</u> unless the defendant served significant (30 days or more) jail time over it.[3]

**Alternatives to Incarceration are an Important Mechanism to Promote Public Safety and Meet the Purposes of Sentencing.**

   Encouraging alternatives to incarceration for "first offenders" and other individuals who need not be incapacitated to protect the public is a critically important goal of the guidelines. Research shows a "weak relationship between

---

[3] Professor Alexandra Natapoff, who has identified the numerous "systemic implications" of misdemeanor prosecutions, including how "misdemeanor processing is the mechanism by which poor defendants of color are swept up into the criminal justice system (in other words, criminalized) with little or no regard for their actual guilt." Alexandra Natapoff, Misdemeanors, 85 S. Cal. L. Rev. 1313, 1313 (2012). The history of misdemeanor prosecutions shows that they have been "social and economic governance tools" used predominantly in urban areas to "manage various disadvantaged populations." Alexandra Natapoff, Criminal Misdemeanor Theory and Practice, Oxford Handbooks Online 3 (2016).  Many minor offenses have significant impact on people of color and the poor. "Police use loitering, trespassing, and disorderly conduct arrests to establish their authority over young black men, particularly in high crime areas, and to confer criminal records on low-income populations of color." The over-policing of poor neighborhoods of color caused by the use of "zero-tolerance" policies often results in disproportionate convictions for loitering, trespassing, and disorderly conduct. See generally K. Babe Howell, Prosecutorial Discretion and the Duty to Seek Justice in an Overburdened Criminal Justice System, 27 Geo. J. Leg. Ethics 285, 286 (2014). In addition, driving on a suspended license, which constitutes a sizable portion of local misdemeanor dockets, is an offense that has a disproportionate impact on the poor. Such offenses criminalize poverty because suspensions often occur when a low-income person cannot afford to pay the fine for a simple traffic violation.

incarceration and crime reduction, and highlights proven strategies for improving public safety that are more effective and less expensive than incarceration."[4] The best way to promote public safety and ensure that convicted persons can lead law-abiding lives is through broad use of non-incarceration sentences, especially since "incarceration does little to change a person's behavior."

**Restitution inapplicable.**

Defendant caused no property destruction nor contributed nor aided or abetted any property destruction. Merely seeing property destruction is insufficient for an assessment of restitution.

Dated: October 09, 2023

Respectfully Submitted,

/s/ *John M. Pierce*
John M. Pierce
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: jpierce@johnpiercelaw.com

*Attorney for Defendants*

---

[4] Vera Institute of Justice, Overview of The Prison Paradox: More Incarceration Will Not Make Us Safer
(July 2017), https://www.vera.org/publications/for-the-record-prison-paradox-incarceration-not-safer.

## CERTIFICATE OF SERVICE

I, John M. Pierce, hereby certify that on this day, October 10, 2023, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

/s/ John M. Pierce
John M. Pierce